IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ARTHUR L. MATHEWS, | ) | CASE NO. 4:11CV362 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Arthur L. Mathews ("Mathews") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act), 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* Doc. 1. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the following reasons, the final decision of the Commissioner should be AFFIRMED.

## I. Procedural History

On June 16, 2008, Mathews filed applications for DIB and SSI, alleging a disability onset date of May 1, 2008. Tr. 104-13. Mathews claimed that a combination of impairments, including depression, alcoholism, and paranoid schizophrenia, prevented him from working. Tr. 54. The state agency denied Mathews' claims initially on October 24, 2008 (Tr. 50-51), and on reconsideration on February 19, 2009. Tr. 52-53. On April 15, 2009, Mathews filed a written request for a hearing (Tr. 77-78) and, on April 14, 2010, a hearing was held before Administrative Law Judge John J. Porter (the "ALJ"). Tr. 33-49.

In a decision dated June 23, 2010, the ALJ determined that Mathews was not disabled. Tr. 5-32.  The ALJ reached that determination by applying welfare reform legislation adopted by Congress in 1996, which provides that a person shall not be considered disabled if alcoholism would be a contributing factor material to the Commissioner's determination that the person is disabled.  Mathews requested review of the ALJ's decision by the Appeals Council.  Tr. 5-32. On December 16, 2010, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.

## II.  Evidence

### A.  Personal Evidence

Mathews was born on October 8, 1964, and was 43 years old at the time he filed his applications for DIB and SSI.  Tr. 19, 37.  He graduated from high school and is able to communicate in English.  Tr. 19, 38, 167.  At the time of the administrative hearing, Mathews lived with his parents.  Tr. 42.

### B.  Medical Evidence

#### 1.  Treatment History

Edward Novosel, M.D., served as Mathews' family physician prior to and during the relevant period for a variety of conditions including dental problems, blood pressure management, back pain, anxiety/depression, and alcohol abuse.  Tr. 316-45.  On March 15, 2004, Dr. Novosel reported that Mathews was seventeen months sober and looked and felt better.  Tr. 329.  Dr. Novosel noted that Mathews was working as a school custodian and "doing well with that."  Tr. 329.  Dr. Novosel also noted that Mathews was doing quite well regarding his anxiety and stress on his medication.  Tr. 329.

On April 13, 2007, Dr. Novosel noted that Mathews had a history of chronic alcohol abuse and schizophrenia.  Tr. 324.  Mathews reported to Dr. Novosel that he had been out of Zoloft for a while, and that it helped him tremendously with his alcohol abuse.  Tr. 324.  On June 13, 2007, Dr. Novosel noted that Mathews wanted to return to work following an inpatient treatment for alcohol abuse.  Tr. 324.  He cleared Mathews to return to work without any limitation, and noted that his schizophrenia was doing well on Zoloft and Zyprexa.  Tr. 324.

On February 11, 2008, Mathews was admitted for stabilization to Trumbull Hospital for three days due to extensive use of alcohol, depression, psychosis, and suicidal ideation.  Tr. 353, 361.  Mathews reported that he had stopped taking his medications (Zyprexa, Zoloft, Cymbalta, and Campral) and had been drinking alcohol excessively.  Tr. 356, 363, 375.  In explaining his suicidal ideation, Mathews stated that he was fearful that he would lose his job.  Tr. 386.  Mathews reported that he was sober from October 2002 through 2006.  Tr. 394.  By the third day of inpatient treatment, Mathews was taking his medication and doing really well, attending all the therapy classes, and feeling almost normal.  Tr. 353.  Upon discharge, Ehab Sargious, M.D., the admitting psychiatrist (Tr. 384), diagnosed alcohol dependency/withdrawal, depression NOS, psychosis NOS, and history of paranoid schizophrenia.  Tr. 353.  He assessed a Global Assessment of Functioning (GAF) scale score of 55.  Tr. 353.[1]

Mathews began treating with Dr. Sargious for his mental health issues.  Mathews presented to Dr. Sargious on February 18, 2011, one week after his discharge from Trumbull Memorial, and stated that he was ready to return to work.  Tr. 418.  Dr. Sargious continued

---

[1] The GAF scale is used to report a clinician's judgment of an individual's overall level of functioning.  Clinicians select a specific GAF score within the ten-point range by evaluating whether the individual is functioning at the higher or lower end of the range. A GAF score of 51- 60 indicates moderate symptoms, e.g., flat affect and circumstantial speech, occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, e.g., few friends, conflicts with peers or co-workers.  *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33-34 (American Psychiatric Ass'n, 4th Ed. text rev. 2000) (DSM-IV-TR).

Zyprexa, Cymbalta, and Campral.  Tr. 418.  On March 13, 2008, Mathews reported regret over a recent drink, stating that he did not want to lose his job.  Tr. 417.

On May 25, 2008, Mathews returned to Trumbull Hospital with complaints of suicidal thoughts because he lost his job.  Tr. 244, 247.  Hospital records reveal that Mathews drank twelve cans of beer that day.  Tr. 247.  The primary diagnosis was alcohol abuse and the secondary diagnosis was depression.  Tr. 249.  Keflex was prescribed and Mathews subsequently felt much better and denied suicidal ideation.  Tr. 250.  Mathews was discharged with instructions to follow up with therapy.  Tr. 255.

On May 29, 2008, Mathews saw Dr. Sargious.  Tr. 235.  Dr. Sargious noted that Mathews was struggling with his mental health symptoms and was having difficulty ceasing alcohol use.  Tr. 235.  Dr. Sargious noted that Mathews lost his job because he was drinking when he went to work.  Tr. 235.  Mathews reported to Dr. Sargious that his employer conducted a drug test and the test revealed that Mathews had alcohol in his system while he was at work.  Tr. 235.  As a result, Mathews had to resign from his job as a school custodian.  Tr. 235.

Mathews started treatment at Coleman Professional Services ("CPS") on May 30, 2008.  Tr. 257.  Mathews reported being a chronic alcoholic who was terminated from a "'really good stable job'" as a school custodian because he was drinking before work.  Tr. 258.  He stated that he had worked at that job from 2003 until May 22, 2008, when he was terminated.  Tr. 265.  Mathews stated that he was sober from 2002 to 2006.  Tr. 258.  The intake counselor, Patty Karchut, L.P.C.C., noted that Mathews wanted to find employment and also wanted help applying for disability (Tr. 265), and that he could work when sober but was currently struggling with sobriety.  Tr. 265.

In July 2008, Mathews saw Dr. Sargious and reported that he had been sober for thirty days, as well as compliant with his medication.  Tr. 234.  Mathews did not report paranoia but was anxious and worried about his financial situation.  Tr. 234.  Dr. Sargious continued the same medications and instructed Mathews to return in three months.  Tr. 234.  On September 18, 2008, Dr. Sargious reported that Mathews was still struggling with depression, anxiety, and alcoholism. Tr. 413.  Dr. Sargious noted that Mathews "can't stop using."  Tr. 413.  Dr. Sargious opined that Mathews would be "[d]oing overall o.k. if he would stay away from the alcohol but he is still having difficulties with that."  Tr. 413.  On October 30, 2008, Mathews told Dr. Sargious that he gave his father all of his money so that he did not have access to money to buy alcohol.  Tr. 233.

On January 22, 2009, Mathews reported to Dr. Sargious that he had been sober for one month and had no psychotic symptoms or panic attacks.  Tr. 411.  Mathews stated that he was thinking about eventually finding a job and returning to work.  Tr. 411.  Dr. Sargious opined that Mathews was showing overall stability regarding his paranoid schizophrenia and alcohol dependency.  Tr. 411.  On February 23, 2009, Mathews reported to Dr. Sargious that he was still sober and had increased symptoms of depression.  Tr. 410.  Dr. Sargious substituted Zoloft for Cymbalta.  Tr. 410.

In February 2009, Mathews began counseling with Anita Pirone, M.S., Ed., L.P.C.C.  Tr. 423-55.  Mathews had previously attended counseling with Ms. Pirone from 1998 to 2001.  Tr. 421.  Mathews reported having a lot of depression and anxiety, and being sober for two months. Tr. 423.  On the intake form, Ms. Pirone described Mathews as "looking for work" and did not check the box to indicate that he was disabled.  Tr. 425.

On March 17, 2009, Mathews saw Dr. Sargious and reported that he was going to try to work as a substitute teacher to transition to a part-time and eventually full-time job.  Tr. 409.  On

5

April 16, 2009, Dr. Sargious noted that Mathews was two weeks sober and "doing considerably well." Tr. 408.  On May 14, 2009, Dr. Sargious noted that Mathews, then six weeks sober, felt good about himself and that medication was helping.  Tr. 407.  Dr. Sargious assessed that Mathews was "doing overall well."  Tr. 407.  On June 16, 2009, Mathews stated that he had been sober for two months and no longer had paranoia.  Tr. 406.  Mathews informed Dr. Sargious that his sole regret about his past was losing his job.  Tr. 406.  Dr. Sargious assessed a lot of depression symptoms.  Tr. 406.  In September 2009, his six month mark for sobriety, Mathews told Dr. Sargious that he was contemplating going back to work.  Tr. 404.

Meanwhile, Mathews continued attending counseling sessions with Ms. Pirone.  In July and August of 2009, Mathews discussed seeking re-employment, including at his old job as a school janitor.  Tr. 445-47.  On September 23, 2009, Mathews told Ms. Pirone that he felt better after the doctor changed his medication.  Tr. 450.  On October 26, 2009, Ms. Pirone noted that she helped Mathews to understand how his anxiety about returning to work was related to his drinking.  Tr. 452.  On November 9, 2009, Mathews reported to Ms. Pirone that he had relapsed and started drinking again.  Tr. 454.  On December 9, 2009, Mathews reported that he had gotten drunk several times since the last session.  Tr. 455.

In a letter to Mathews' counsel dated February 11, 2010, Ms. Pirone reported that, when she treated Plaintiff from 1998 to 2001, he "was able to quit drinking for many years and even hold down a full-time job, a job in which he was able to work at his own pace and with little or no supervision."  Tr. 421.  She stated that, since Mathews resumed counseling in February 2009, he reported feelings of depression/anxiety, paranoia, and suicidal ideation, and had resumed binge-drinking.  Tr. 421.  Ms. Pirone stated that Mathews would drink alcohol to deal with his symptoms of schizophrenia.  Tr. 421.  She opined that Mathews' drinking was a symptom of his

6

"greater and primary mental health issues" and that he used alcohol to control his mental health symptoms.  Tr. 421.  Ms. Pirone opined that Mathews could not work due to the severity of his mental illness.  Tr. 421.

Mathews was admitted to Sharon Regional Health System from March 22 to March 26, 2010, for stabilization following alcohol withdrawal and increased psychotic symptoms.  Tr. 476, 478.  On March 23, 2010, psychiatrist Wally Novero, M.D., evaluated Mathews, who chiefly complained of auditory and visual hallucinations (Tr. 476), "but could not really elaborate on what he had been seeing or hearing."  Tr. 477.  Mathews told Dr. Novero that his schizophrenia was normally stable on medication but he had been drinking fairly heavily for the last few weeks and noticed an increase in his symptoms.  Tr. 476.  Examination revealed that Mathews had an anxious mood, good immediate memory, fair recent memory, intact remote memory, average intelligence, fairly good concentration, fair to poor insight and judgment, and a tendency to minimize his alcohol usage and its effect on his medications.  Tr. 477-78.  Dr. Novero diagnosed paranoid schizophrenia and alcohol dependence.  Tr. 478.  Dr. Novero did not make any changes to Mathews' medication because he found that Mathews' decompensation was "likely due to his alcohol dependence and withdrawal."  Tr. 478.

### 2. State Agency Examining Psychologist

On September 18, 2008, Margaret Bancroft, Ph.D., a state agency consultative psychologist, examined Mathews.  Tr. 287-92.  Mathews reported being fired from his last job as a custodian due to his drinking.  Tr. 288.  He stated that he was participating in a vocational program at CPS and that the staff was trying to find him employment.  Tr. 288.  He denied having problems getting along with coworkers or supervisors at any of his jobs.  Tr. 288.  Mathews stated that he drank at least twelve cans of beer daily, and sometimes drank a case of

7

beer (twenty-four cans) over a twenty-four hour period.  Tr. 288.  Mathews reported that he attended AA meetings sporadically and that alcohol provided "an instant calm" and helped because he was constantly "on the edge."  Tr. 288.

Dr. Bancroft diagnosed alcohol dependence and psychotic disorder NOS, and assessed a GAF scale score of 60.  Tr. 290.  She found that Mathews' ability to relate to others, including fellow workers and supervisors, was moderately impaired.  Tr. 290.  She found no impairment in Mathews' ability to follow and remember simple instructions.  Tr. 291.  Dr. Bancroft found that Mathews' ability to maintain attention, concentration, persistence and pace was moderately impaired.  Tr. 291.  Finally, Dr. Bancroft found that Mathews' ability to withstand the stress and pressures of day-to-day work activities was moderately impaired.  Tr. 291.

### 3. State Agency Reviewing Physician

In October 2008, state agency psychologist Carl Tishler, Ph.D., reviewed Mathews' file and determined that his history of paranoid schizophrenia, psychotic disorder NOS, avoidant personality disorder, and alcohol dependence were not of listing-level severity.  Tr. 299-300, 304-05.  Dr. Tishler found that Mathews' impairments only caused a mild restriction of his daily living activities, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and that he had only one to two episodes of decompensation.  Tr. 307.  Dr. Tishler further opined that Mathews was not significantly limited or was only moderately limited in every category of mental work activity.  Tr. 293-94.  Dr. Tishler noted that Mathews had mental complaints and problems, but that everything was "compounded and to some degree hidden by his continued problematic use of alcohol."  Tr. 295.  Dr. Tishler also noted that Mathews' "steady continual usage of alcohol" makes his ability to control his paranoid schizophrenia symptoms questionable.  Tr. 295.

C.	**Testimonial Evidence**

1.	**Mathews' Testimony**

On April 14, 2010, Mathews appeared with counsel and testified at the administrative hearing.  Tr. 33-49.  He testified about his vocational history and stated that he last worked as a school custodian, until he was asked to resign.  Tr. 39.  Mathews explained, "I was drinking and, you know, I would miss work and stuff like that so I was asked to resign."  Tr. 39.  Mathews then testified that he could not work due to paranoia and fatigue caused by his medications (Tr. 40), as well as his mental state that drags him down.  Tr. 41.  Mathews stated that he has a "pretty bad" problem with alcohol.  Tr. 41.  He reported that he attended AA meetings and talked to his sponsor to try to stay on top of his drinking problem.  Tr. 41.  He stated that he drinks to cope with his anxiety.  Tr. 41.  He acknowledged that, in the past, his drinking had interfered with his ability to work.  Tr. 42.

Mathews testified that he lived with his parents and sometimes did household chores, such as cutting the grass.  Tr. 43.  He had a driver's license and drove to AA meetings.  Tr. 43. He stated that his medication made him very fatigued and that sometimes the fatigue was so bad that he could only take a bath, and do nothing else for the entire day.  Tr. 40.  Mathews also stated that he was hospitalized for four days beginning on March 22, 2010, because of a psychotic episode.  Tr. 45.  Mathews reported that he was not drinking at that time, but that he had been drinking on March 18 and 19, 2010.  Tr. 46.

2.	**Vocational Expert's Testimony**

Patricia Murphy, a vocational expert ("VE"), also testified at the hearing.  Tr. 46-49.  She testified that Mathew had worked as a janitor/custodial worker and as an assembler, which were both unskilled positions at heavy exertional levels.  Tr. 46.  The VE reported that Mathews

worked as a material handler, which was a semi-skilled position at a heavy exertional level. Tr. 46. The VE also reported that Mathews worked as a market researcher, which was an unskilled position at a light exertional level. Tr. 46. In a hypothetical, the ALJ asked the VE whether a person could perform any of Mathews' past jobs if the individual had the same vocational factors as Mathews and the following limitations:

> [W]ork at the light exertional level, but would be limited to simple, routine, and repetitive tasks not performed in a fast paced production environment, only simple work decisions, relatively few work place changes, relatively low stress, and this person would have no interaction with the public, and interaction with coworkers only incidentally, and interaction with a supervisor one-sixth of a typical work day.

Tr. 47. In response, the VE testified that such an individual could perform Mathews' past work as janitor/custodial worker at a reduced exertional level reflecting the limitation to light work (approximately 33,000 jobs nationally). Tr. 47. The ALJ then asked the VE whether there were any other jobs the hypothetical individual could perform. Tr. 47. The VE testified that the hypothetical individual could perform jobs that existed in significant numbers in the national economy, including mail clerk (approximately 161,000 jobs nationally); router clerk (approximately 240,000 jobs nationally); and coin machine collector (approximately 240,000 jobs nationally). Tr. 48.

The ALJ then added limitations, asking the VE whether the hypothetical individual could perform jobs if he would miss work three-fourths of the time or would miss work twenty times annually due to being under the influence of alcohol. Tr. 48. The VE testified that there would be no jobs that such a person could perform. Tr. 48.

## III.  Standard for Disability

**A.**     **Standard Five-Step Process**

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).  In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of

> performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920 (b)-(g); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

**B.      Regulatory Requirements when Alcoholism or Drug Abuse Is at Issue**

In the Contract with America Act of 1996 ("Welfare Reform Act"), Pub.L.No. 104–121, 110 Stat. 847, 852-53 (1996), codified at 42 U.S.C. §§ 423(d)(2)(C) and 1382c(a)(3)(J), Congress amended the Social Security Act to prohibit the award of benefits to individuals for whom alcoholism or drug addiction is a contributing factor material to their disability determination. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The statute provides, in relevant part:

> An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.

42 U.S.C. §§ 423(d)(2)(C). Under the statute and implementing regulation, the key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether the individual would be disabled if he or she stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(1). In order to determine whether a claimant's alcohol or drug use precludes them from receiving benefits, the ALJ must first determine whether a claimant is disabled when the claimant's substance abuse is taken into account. 20 C.F.R. § 404.1535(a). Then, the ALJ must determine whether alcohol or drug use is a material contributor to the determination of disability, i.e., whether severe enough limitations would remain in the absence of alcoholism or drug addiction. *Id.* A determination that the remaining

limitations would not be disabling will result in a finding that drug addiction or alcoholism is a "contributing factor material to the determination of disability." 20 C.F.R. § 416.935(b)(2)(i). Conversely, a determination that the remaining limitations are disabling will result in a finding that the claimant is disabled independent of his drug addiction or alcoholism and, therefore, that drug addiction or alcoholism "is not a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(b)(2)(ii).

In order to make the required determinations, the ALJ must first complete an initial five-step analysis and determine whether the claimant is disabled with substance abuse. *Underwood v. Comm'r of Social Sec.*, Case No. 08-2540, 2010 WL 424970 at *6, * 10 (N.D. Ohio Jan. 22, 2010). If the answer is affirmative, the ALJ must conduct a second five-step analysis in order to determine if the claimant would still be disabled without the substance abuse. *Id.*

### IV. The ALJ's Decision

In his June 2010 decision, the ALJ correctly outlined the relevant standard of review for a claimant with impairments caused by, or connected to, alcoholism or drug abuse and, against that backdrop, conducted a thorough analysis of Mathews' case. Tr. 5-32. The ALJ found that Mathews had severe impairments and that, when his substance abuse was considered in the five-step analysis, a finding of disabled was appropriate because Mathews was unable to perform his past relevant work or any other work in the national economy. Tr. 20. The ALJ then determined that, if Mathews stopped his substance abuse, a finding of not disabled would be appropriate because his remaining impairments, although severe, would not cause functional limitations of disabling severity and Mathews would be able to perform his past work, as well as other work available in significant numbers in the national economy. Tr. 23. Thus, the ALJ concluded that, because Mathews would not be disabled if he stopped his substance use, the substance use

disorder was a contributing factor material to the determination of disability and, as a result, Mathews was not disabled within the meaning of the Social Security Act. Tr. 26.

### V. Arguments of the Parties

Mathews challenges the Commissioner's decision on one ground: his assertion that the ALJ erred in rejecting the opinion of his counselor, Anita Pirone, that his schizophrenia caused his alcohol abuse. Doc. 14, pp. 1-4. In response, the Commissioner argues that the ALJ undertook a comprehensive evaluation of the overall evidentiary record, properly evaluated the opinion of Ms. Pirone, and reasonably determined that Mathews was not disabled because substance abuse was a contributing factor material to the determination of disability. Doc. 15, pp. 13-19.

### VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or, indeed, a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Accordingly, a court "may not try the

case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.      The ALJ Properly Evaluated the Opinion of Mathews' Therapist, Ms. Pirone**

Plaintiff's sole argument is that the ALJ erred in rejecting Ms. Pirone's opinion that his alcohol abuse was a symptom of his mental illness.  Doc. 14, p. 3.  Mathews contends that, had the ALJ not rejected this opinion, it is possible that the ALJ's finding that Mathews' alcohol use was a contributing factor material to the determination of disability would have been altered.  This argument is without merit.

The ALJ was not obliged to accept Ms. Pirone's opinion.  A therapist is not an accepted medical source whose opinion must be given controlling weight.  20 C.F.R. § 416.913(a).  Instead, a therapist is considered a non-listed medical source whose opinion may, but is not required to, be used to show the severity of a claimant's impairments.  20 C.F.R. § 416.913(d)(1).  In addition, Social Security Ruling ("SSR") 06–03p, 2006 WL 2329939, provides that opinions from non-medical sources who, in their professional capacity, have seen the claimant should be evaluated by using the applicable factors set forth in 20 C.F.R. § 404.1527(d)(2) including the specialization of the source, the supportability of the opinion, and how consistent the opinion is with other evidence.  20 C.F.R. §§ 404.1527(d)(2).

Here, the ALJ thoroughly evaluated the evidence from Ms. Pirone and, while giving great weight to her clinical data (Tr. 17, 26), reasonably gave little weight to her opinion that Mathews' schizophrenia caused his addiction to alcohol.  Tr. 17-18, 21, Tr. 26-27.  In evaluating this opinion, the ALJ noted that Ms. Pirone had a master's degree in education, but was not a psychiatrist, and therefore was not qualified to offer a psychiatric opinion that Mathews' drinking was caused by his mental health issues.  Tr. 18, 27.

Ms. Pirone's opinion was not pertinent to the ALJ's analysis in any event. The ALJ noted that, under the regulations, he was only required to determine if substance abuse was a contributing factor material to the determination of disability by evaluating the extent to which the claimant's limitations would remain if he ceased the substance abuse; he was not required to determine the cause of the substance abuse. *See* 20 C.F.R. 416.935. In other words, he explained, he did not need "to make a metaphysical determination as to the chicken and the egg question whether the mental illness causes the alcoholism or the alcoholism cause[s] the mental illness." Tr. 27. The ALJ then determined that, based on the evidence in the record, it was possible to separate the effects of Mathews' drinking from the effects of his mental health issues. Indeed, the ALJ found that there was clear and uncontroverted evidence, including Ms. Pirone's own treatment notes, that, when Mathews was sober, he was capable of working and handling a full-time job. Tr. 17, 27. This lengthy discussion demonstrated that the ALJ properly discounted Ms. Pirone's opinion as to the cause of Mathews' alcoholism under the regulatory factors of specialization of the source, supportability, and consistency. 20 C.F.R. §§ 404.1527(d)(2).

Mathews also argues that the ALJ's rejection of Ms. Pirone's opinion was improper under *Trent v. Astrue,* No. 09-2680, 2011 WL 841538 (N.D. Ohio Mar. 8, 2011) because the impact of alcohol on a mental condition is beyond the scope of the ALJ's professional and legal expertise. Mathews' reliance on *Trent* is misplaced. In *Trent,* the ALJ took administrative notice that alcohol had been shown to exacerbate symptoms of mental disorders and then found it was "reasonable to assume that if the claimant stopped consuming alcohol, her depressive symptoms would improve with ongoing treatment." *Id*. at *5. The court in *Trent* found that an ALJ may not assume that depressive symptoms would improve if the claimant stopped consuming alcohol because the impact of alcohol on a mental condition is beyond the scope of

16

the ALJ's area of expertise. *Id*. at \*\*5-6.

In this case, the ALJ did not make any assumptions regarding the affects of alcohol consumption on Mathews' mental impairment symptoms. Rather, the ALJ determined that Mathews would not be disabled if he stopped using alcohol because there was "clear and uncontroverted evidence" that, when Mathews was not drinking, he was capable of holding a full-time job. For example, the ALJ gave great weight to Ms. Pirone's factual statement that Mathews was working full-time when he was not drinking. Tr. 17, 26. The ALJ properly weighed the evidence, including the opinion of Ms. Pirone, and concluded that alcohol was a contributing factor material to the determination of disability. Thus, unlike the ALJ in *Trent,* the ALJ here did not make any improper assumptions without evidentiary support.

**B.**     **Substantial Evidence Supports the ALJ's Determination that Mathews was not Disabled because His Substance Use Disorder was a Contributing Factor Material to the Determination of Disability**

A review of the record shows that the ALJ's determination that Mathews' alcohol abuse was a material component of his impairments is supported by substantial evidence. The key issue is whether Mathews was disabled independent of the substance abuse. There is substantial evidence in the record to support the ALJ's determination that Mathews was not disabled independent of his substance use. For example:

- Mathews was sober from 2002 to 2006 (Tr. 258, 295, 394), and performed his custodian job well from 2003 to 2008 (Tr. 329, 496), despite his history of mental problems (Tr. 288);

- Mathews' primary care physician, Dr. Novosel, reported in March 2004 that his anxiety and stress were doing quite well because of his medications, that he was working as a school custodian and "doing well with that," and that he wanted to return to work following a recent inpatient treatment for alcohol abuse (Tr. 324, 329);

- Mathews was hospitalized in February 2008 following a period of excessive drinking and for suicidal ideation (Tr. 353, 361), but he improved by the third day (Tr. 353), and returned to his job as a custodian one week after discharge (Tr. 418);

- Mathews was fired from his custodian job, which he described as a "really good stable job" (Tr. 258), in May 2008, solely because he went to work intoxicated, as confirmed by his employer-mandated substance abuse test (Tr. 235, 265, 288, 415, 477;

- Within one week of being fired, Mathews sought mental health counseling and expressed a desire for help obtaining work and applying for disability (Tr. 257-58);

- Mathews was involved in a vocational program at CPS and the staff was trying to find him employment (Tr. 258, 265, 288); the intake counselor at CPS noted that Mathews could work when he was sober but that he struggles with sobriety (Tr. 265);

- Dr. Sargious, Mathews' treating psychiatrist, opined in September 2008 that Mathews would be "[d]oing overall o.k. if he would stay away from the alcohol but he is still having difficulties with that" (Tr. 413);

- During Mathews' periods of sobriety, Dr. Sargious reported that Mathews did not have psychotic symptoms or panic attacks (Tr. 411), nor did he have paranoia (Tr. 406), and was "doing considerably well" or "doing overall well" (Tr. 407); but, when Mathews had an alcoholism relapse, he was hospitalized in March 2010 for stabilization and had increased psychotic symptoms (Tr. 476, 478);

- During his periods of sobriety, Mathews consistently indicated his desire to return to work (Tr. 404, 411, 425); in March 2009, he reported trying to work as a substitute teacher so he could transition to a part-time and eventually full-time job (Tr. 409); and, at his six month mark for sobriety in September 2009, Mathews told Dr. Sargious that he was contemplating going back to work (Tr. 404);

- In July and in August of 2009, Mathews discussed seeking re-employment at his old job in a therapy session with Ms. Pirone (Tr. 445-47); and

- Ms. Pirone indicated in her letter dated February 10, 2011, that she had previously treated Mathews from 1998 to 2001, and that he "was able to quit drinking for many years and even hold down a full-time job, a job in which he was able to work at his own pace and with little or no supervision" (Tr. 421).

As the foregoing summary demonstrates, there is substantial evidence in the record that (1) Mathews could work when he was not abusing alcohol, and (2) that he in fact did work successfully during his period of sobriety from 2002 to 2006. *See Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004) ("[T]he ALJ looked to periods of sobriety in the record to determine whether Bartley suffers from a work-limiting mental illness independent of substance

abuse. That analysis is fully consistent with 20 C.F.R. § 416.935."). In light of this evidence, it was reasonable for the ALJ to determine that, absent his alcohol abuse, Mathews could perform the work described in the RFC, including his past work as a custodian, as well as other jobs that were available in significant numbers in the national economy. Accordingly, the ALJ's decision that, if Mathews stopped abusing alcohol, he would not be disabled, and that his alcohol abuse was therefore a material and contributing factor to a disability determination, is supported by substantial evidence.

### VII. Conclusion and Recommendation

For the foregoing reasons, the final decision of the Commissioner denying Plaintiff Arthur L. Mathews' applications for DIB and SSI should be AFFIRMED.

Dated: December 22, 2011

Kathleen B. Burke
United States Magistrate Judge

### **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).